IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| BASS PRO, LLC, and<br>BIG CEDAR, LLC,<br><br>                Plaintiffs,<br><br>v.<br><br>BLUEGREEN VACATIONS<br>UNLIMITED, INC.,<br>*Serve:* 4960 Conference Way North, Ste. 100<br>       Boca Raton, FL 33431<br><br>                Defendant. | Case No. 6:19-cv-03143<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs Bass Pro, LLC, and Big Cedar, LLC (collectively, "Bass Pro"), upon personal knowledge as to their own facts and conduct and upon information and belief as to all other matters, allege as follows:

### INTRODUCTION

1. Bass Pro brings this diversity action for contractual damages against Bluegreen Vacations Unlimited, Inc. ("Bluegreen"), a Florida-based seller of timeshare products and operator of timeshare resorts. Bass Pro, Bluegreen, and certain of their affiliates are parties to an Amended and Restated Marketing and Promotions Agreement (the "Marketing Agreement"), as entered on December 31, 2007 and subsequently amended.[1] *See* Exhibit A. This lawsuit is necessitated by Bluegreen's material violations of the Marketing Agreement and Bass Pro's desire to protect its customers.

### PARTIES

2. Plaintiff Bass Pro, LLC is a single-member limited liability company organized

---

[1] Bass Pro, LLC, is the successor to Bass Pro, Inc., which is a named party to the 2007 Marketing Agreement.

under the laws of the State of Delaware with its principal place of business Springfield, Missouri. The sole member of Bass Pro, LLC is Huntsman Holdings, LLC, a single-member limited liability company organized under the laws of the State of Delaware with its principal place of business Springfield, Missouri. The sole member of Huntsman Holdings, LLC is Bass Pro Group, LLC. Bass Pro Group, LLC is a single-member limited liability company organized under the laws of the State of Delaware with its principal place of business Springfield, Missouri. The sole member of Bass Pro Group, LLC is Bass Pro Holdings, LLC, a single-member limited liability company organized under the laws of the State of Delaware with its principal place of business Springfield, Missouri. Bass Pro Holdings LLC's single member is Johnny Morris Outdoors, LLC, a single-member limited liability company organized under the laws of the State of Delaware with its principal place of business Springfield, Missouri. Johnny Morris Outdoors, LLC's single member is American Sportsman Holdings Co. American Sportsman Holdings Co. is a privately held corporation organized within and with its principal place of business in Missouri with no corporation owning more than 10% of its stock.

3. Plaintiff Big Cedar, LLC is a Missouri limited liability company with its principal place of business in Missouri. The sole member of Big Cedar, LLC is Huntsman Holdings, LLC. Huntsman Holdings, LLC's ownership structure is described in the paragraph above.

4. Defendant Bluegreen is a Florida corporation with its principal place of business located at 4960 Conference Way North, Suite 100, Boca Raton, FL 33431.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over Bluegreen because Bluegreen has transacted business in the State of Missouri and the cause of action asserted herein arises out of those contacts with the State of Missouri. In addition, Bluegreen has consented to personal jurisdiction in this Court by agreeing to the following provision of the Marketing Agreement:

> Section 7.2 <u>Submission to Jurisdiction</u>. Each of the parties hereto irrevocably (A) agrees that any legal suit, action or proceeding arising out of or based upon this Agreement shall be instituted only in the Federal District Court for the Western District of Missouri, (B) waive, to the fullest extent it may effectively do so, any objection which it may now or hereafter have to venue of any such proceeding and (C) submit to the exclusive jurisdiction of such courts in any such suit, action or proceeding.

*See* <u>Exhibit A</u>, Section §7.2.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391. A substantial part of the events giving rise to this action occurred in this District, and Bluegreen is subject to the Court's personal jurisdiction in this District.

## FACTS

8. Bass Pro and Bluegreen entered into the Marketing Agreement on December 31, 2007. Among other things, the Marketing Agreement allowed Bluegreen access to certain Bass Pro retail stores in exchange for a commission on Bluegreen's sales of timeshares to customers identified in those stores. The Marketing Agreement contained important provisions designed to protect Bass Pro's customers and ensure Bass Pro received fair compensation. As set forth below, Bluegreen breached these provisions.

### *Bluegreen's Failure to Pay Commissions*

9. Under the Marketing Agreement, the primary economic benefit to Bass Pro is Bluegreen's commitment to pay a commission to Bass Pro for the sale of timeshare interests to customers identified in the Bass Pro retail stores:

> In consideration for the use of the BP/BC Marketing Channels, *Bluegreen shall pay to Big Cedar . . . a commission (the "Generation Commission") for each timeshare interest in a Bluegreen Timeshare Facility that is sold by Bluegreen or a Bluegreen Affiliate to a buyer that is generated through the BP/BC Marketing Channels. . . . A buyer shall be deemed to be generated through a BP/BC Marketing Channel . . . if* such buyer is *[1]* uniquely identified through a BP/BC Marketing Channel, *[2]* accepts a promotional marketing offer from Bluegreen or a Bluegreen Affiliate, and *[3]* acquires a timeshare interest in one of Bluegreen's Timeshare Facilities <u>*at any time thereafter*</u>.

See Exhibit A, Section 4.1(a) (emphasis added).

10. Despite this clear language, Bluegreen has refused to pay *any* commission for timeshare sales that were generated through the BP/BC Marketing Channels if those sales involved an interim "sampler package" provided by Bluegreen. This refusal is a plain breach of the Marketing Agreement, as all three conditions of Section 4.1(A) have been satisfied – entitling Bass Pro to a commission. Bass Pro provided notice of this default by at least July 23, 2018.

*Bluegreen's Unauthorized Commission "Claw Backs"*

11. In 2017, Bass Pro objected to Bluegreen's practice of "clawing back" commissions due to a customer default or cancellation years after the original sale. As a result, Bluegreen repaid Big Cedar approximately $4.8 million for the period between January 1, 2008 and June 30, 2017. However, in violation of the Marketing Agreement, Bluegreen then reinstituted this unauthorized practice between July 2017 and the present. Bass Pro provided notice of this default by at least July 23, 2018.

*Bluegreen's Imposition of Unauthorized Tour Generation Fees*

12. The Marketing Agreement states that (i) "all personnel staffing" at the Bluegreen kiosks in the retail stores "will be employed by Bluegreen," and (ii) Bluegreen is responsible for "actual expenses" for all Bass Pro Shops other than the Springfield location. See Exhibit A, Sections 2.4(h) & (r). In violation of these provisions, Bluegreen has imposed a "tour generation

fee" on Bass Pro for the purpose of recovering Bluegreen's expenses in the Bass Pro retail stores. Bass Pro provided notice of this default by at least July 23, 2018.

13. The violations described above are material breaches of the Marketing Agreement related to fundamental components of the parties' bargain – Bass Pro's desire to protect its customers and to receive the compensation it is owed from Bluegreen.

### *Bluegreen's Salesmanship Breaches*

14. The crux of Bass Pro's retail mission is to provide an outstanding customer experience based on transparency and trust. As a result, the Marketing Agreement included protections to ensure Bluegreen's sale of timeshares did not disrupt or impair that desired customer experience:

> In no event shall the operators or employees of [Bluegreen] engage in "*high pressure salesmanship*" in the solicitation or marketing to customers. Activities of [Bluegreen] and their personnel . . . shall be in a manner *not offensive* to the customers of [Bass Pro], and in compliance with all applicable requirements of law.

*See* Exhibit A, Section 2.4(h) (emphasis added).

15. Bluegreen has breached these contractual commitments through its conduct in the stores.

16. Bass Pro has requested that Bluegreen cure this conduct, but Bluegreen has refused to do so.

### COUNT I – BREACH OF CONTRACT

17. Bass Pro incorporates by reference, as if fully set forth herein, the facts set forth above in paragraphs 1-16 above.

18. The Marketing Agreement is an enforceable agreement between Bass Pro and Bluegreen.

19. Bluegreen has materially breached the Marketing Agreement by refusing to pay commissions on sales that satisfy the requirements of Section 4.1(a). As a result, Bass Pro has sustained substantial damages in the form of commissions owed, in an amount to be established at trial.

20. Bluegreen has materially breached the Marketing Agreement by "clawing back" prior commissions paid to Bass Pro in violation of the Marketing Agreement. As a result, Bass Pro has sustained substantial damages in the form of commissions owed, in an amount to be established at trial.

21. Bluegreen has materially breached the Marketing Agreement by imposing improper fees in violation of Sections 2.4(h) & (r) of the Marketing Agreement. As a result, Bass Pro has sustained substantial damages in the form of improper fees, in an amount to be established at trial.

22. Bluegreen has materially breached the Marketing Agreement by engaging in conduct in violation of Section 2.4(h) of the Marketing Agreement. As a result, Bass Pro has sustained damages.

23. For the avoidance of doubt, Bass Pro does not seek the award of any of (i) consequential damages, (ii) "lost future revenue, income or profits," or (iii) "diminution of value or loss of business reputation or opportunity." While Bass Pro has suffered these different types of damages as a result of Bluegreen's conduct, all parties to the Marketing Agreement agreed that they each waived these types of damages under any and all circumstances. *See* <u>Exhibit A</u>, Section 6.4.

24. Bass Pro has satisfied all conditions precedent for the relief requested.

## PRAYER FOR RELIEF

WHEREFORE, Bass Pro respectfully prays for a judgment against Bluegreen for such amounts as may be proved at trial, including:

A. Damages for commissions that Bluegreen improperly refused to pay or improperly clawed back under the Marketing Agreement and improper fees under the Marketing Agreement, in an amount not less than $10 million;

B. Interest;

C. Attorney's fees as authorized under Section 7.3 of the Marketing Agreement; and

D. Such other, further, and additional relief as this Court deems just and appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Bass Pro hereby demands that all claims in this action be tried to a jury.

Dated: April 17, 2019

*Respectfully submitted,*

   /s/    *Jason C. Smith*
Jason C. Smith    Mo. Bar No. 57657
Derek A. Ankrom    Mo. Bar No. 63689
**SPENCER FANE LLP**
2144 E. Republic Road, Ste. B300
Springfield, Mo. 65804
Telephone: 417-888-1000
Facsimile: 417-881-8035
jcsmith@spencerfane.com
dankrom@spencerfane.com

Mike Stenglein
(Pro Hac Vice Admission Pending)
Adam Gray
(Pro Hac Vice Admission Pending)
**KING & SPALDING, LLC**
500 W. 2nd Street, Suite 1800
Austin, Texas 78701
Telephone: 512-457-2000
Facsimile: 512-457-2100

*Attorneys for Plaintiffs Bass Pro, LLC and Big Cedar, LLC*